IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY K. CALLERY, JOHN B. FRAZIER, and JAMES T. WILLIAMS, Plaintiffs | S S S S | |
| v. | S S | CA-CV-H: _____ |
| EXXONMOBIL CORPORATION, and THE EXXONMOBIL MEDICAL PLAN, Defendants | S S S | |

PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW TIMOTHY K. CALLERY, JOHN B. FRAZIER, and JAMES T. WILLIAMS, Plaintiffs, and complain of EXXONMOBIL CORPORATION, and THE EXXONMOBIL MEDICAL PLAN, Defendants, as follows:

I.

JURISDICTION

1. This court has jurisdiction over the subject matter of this lawsuit pursuant to The Employee Retirement Income Security Act of 1974, ("ERISA") as amended, 29 USC Section 1001 et seq., and the court's pendent jurisdiction.

II.

PARTIES

The Plaintiffs

2. Plaintiff Timothy K. Callery is a US citizen, a former employee of ExxonMobil, and an ExxonMobil retiree residing in Thailand.

3. Plaintiff Timothy K. Callery is a "participant" as that term is defined in 29 USC Section 1002(7).

4. Plaintiff Timothy K. Callery further is a "beneficiary" as that term is defined in 29 USC Section 1002(8).

5. Plaintiff John B. Frazier is a US citizen, a former employee of ExxonMobil, and an ExxonMobil retiree residing in Thailand.

Page 2

6.  Plaintiff John B. Frazier is a "participant" as that term is defined in 29 USC Section 1002(7).

7.  Plaintiff John Frazier further is a "beneficiary" as that term is defined in 29 USC Section 1002(8).

8.  Plaintiff John T. Williams is a US citizen, a former employee of ExxonMobil, and an ExxonMobil retiree residing in Thailand.

9.  Plaintiff John T. Williams is a "participant" as that term is defined in 29 USC Section 1002(7).

10.  Plaintiff John T. Williams further is a "beneficiary" as that term is defined in 29 USC Section 1002(8).

The Defendants

11.  Defendant ExxonMobil Corporation ("ExxonMobil") is an active, for profit, business entity engaged in an industry affecting commerce and is an "employer" within the meaning of 29 USC Section 1002(5).

12.  Defendant ExxonMobil Corporation further is a "plan sponsor" as that term is defined in 29 USC Section 1002(16)(B).

13.  At all times relevant to this lawsuit Defendant ExxonMobil Corporation maintained an "employee welfare benefit plan" or a "welfare plan" as those terms are defined in 29 USC Section 1002(1)(A).

14.  At all times relevant ExxonMobil's employee welfare benefit plan which is the subject of this lawsuit was known as The ExxonMobil Medical Plan, the RMP Medical Supplement Plan, or variations of these terms and titles, which collectively are referenced in this lawsuit as "Medical Plan" or "Plan."

15.  Defendant ExxonMobil Corporation may be served with process by serving its Registered Agent, Corporation Service Company, 211 East Seventh Street, Suite 620, Austin, Texas 78701.

16.  At all relevant times the ExxonMobil Medical Plan was sponsored by Defendant ExxonMobil Corporation.

17.     Defendant ExxonMobil Medical Plan may be served with process by serving its Registered Agent, Corporation Service Company, at 211 East Seventh Street, Suite 620, Austin, Texas 78701.

## III.

## VENUE

18.     Venue of this action is proper in this judicial district because the parties to this lawsuit reside or transact business in this judicial district; the actions, events, and developments which have given rise to the causes of action sued upon occurred in this judicial district; and the causes of action upon which Plaintiffs sue accrued in this judicial district.

19.     Venue is also proper pursuant to 29 USC Section 1132(e)(1).

## IV.

## NATURE OF LAWSUIT

20.     Plaintiffs seek redress for violations by the Defendants of their ERISA rights, common law causes of action, and an action declaring their rights under the Medical Plan pursuant to ERISA and the Federal Declaratory Judgment Act, as amended, 28 USC Section 2201(a), and 29 USC Section 1132(a)(1)(B).

## V.

## FACTS

### Timothy K. Callery's Employment with ExxonMobil

21.     Plaintiff Timothy K. Callery ("Callery") hired on with ExxonMobil in 1973. From May 1973 to April 1974 he worked for ExxonMobil Chemical as a Financial Analyst in New Jersey. Between May 1974 and December 1983 he held various Accounting and Controller's Management positions at ExxonMobil Chemical's headquarters in New Jersey.

22.     From January 1984 to March 1989 he was employed as Operations and Regional Sales Manager also with ExxonMobil Chemical but in Louisville, Kentucky. From April 1989 to December 1996 he held the position of Global Sales and Marketing Manager also with ExxonMobil Chemical in Fairfax, Virginia. His responsibilities included extensive

Page 4

travel to Europe, Asia, and the Pacific Rim to set up regional offices.

23. Beginning with January 1997, Callery began international assignments as an employee of ExxonMobil. Until July 2007 he was the Asia Pacific Regional Manager for ExxonMobil Chemical's Synthetics Business Unit.

24. After more than thirty-four (34) years of service, Callery retired from ExxonMobil, effective July 1, 2007. By that time, he had worked for ExxonMobil overseas for over ten (10) years, namely in Singapore.

25. Following his retirement, Callery resided in Singapore from August 2007 to December 2015. During this time, however, he continued to render services to ExxonMobil, sporadically, as a consultant and on a contract basis. He worked for ExxonMobil's largest Downstream (Lubricants and Chemicals) Regional Distributor.

26. Since January 2016 to the present, Callery has continuously resided in Thailand under ExxonMobil's retirement program.

27. In all, Callery lived and resided outside of the United States for the last twenty-four (24) years either as an ExxonMobil employee or ExxonMobil retiree.

John B. Frazier's Employment with ExxonMobil

28. Plaintiff John Frazier ("Frazier") hired on with ExxonMobil in the summer of 1970 when ExxonMobil was known as Humble Oil Company. In July 1971 he formally became an employee of ExxonMobil. His first position was accountant in Gas Accounting.

29. In 1984 Frazier began overseas assignments as an employee of ExxonMobil. From 1984 to 1988 he worked as a Controller in Egypt.

30. From 1988 to 1997 he worked in the position of Controls and Venture Accounting Manager for Exxon Exploration. In that position he was responsible for controls in headquarters and controls and controller's activities in venture companies worldwide. Specifically, he worked in Africa, South America, China, Russia, and Southeast Asia. He also coordinated with audit on audits in headquarters and venture companies.

31. During this time he also was a Member of ExxonMobil's Business Practices Committee which reviewed and advised on all business practices, ethics, and Foreign Corrupt

Page 5

Practices issues.

32. From 2003 to 2005 Frazier worked for ExxonMobil as a Controller in Thailand.

From 2005 to 2008 he seconded to Qatar Gas in Qatar as Shareholder Advisor on a $22 billion LNG Project. This was Frazier's ending position with ExxonMobil.

33. During this time, Frazier executed a multitude of international assignments for ExxonMobil. From April 1977 to September 1978 he worked in Singapore. From September 1978 to April 1984 he worked in Thailand. From April 1984 to March 1988 he worked in Egypt. From August 1997 to June 2005 he worked in Thailand. And from June 2005 to June 2008 he worked in Qatar.

34. For approximately twenty-six (26) years, Frazier has lived in Thailand, either as an employee of ExxonMobil or as a retiree. From June 2008 to the present, he has continuously resided in Thailand.

35. At all relevant times, Frazier has had a dependent covered by ExxonMobil's medical plan as a beneficiary.

Plaintiff James T. Williams

36. Plaintiff James T. Williams ("Williams") hired on with ExxonMobil in January 1974, and worked in Houston from January 1974 to February 1976 as an Internal Auditor in exploration and production areas.

37. From March 1976 to June 1980 he worked in New Orleans in three (3) different Controller's positions in ExxonMobil's Southeastern Division, and performed accounting activities.

38. From July 1980 to September 1983 he was Internal Audit Supervisor in Australia, where he was responsible for Production Operations and Contracts auditing.

39. From October 1983 to August 1990 Williams worked in Malaysia as Manager of Gas Accounting for three (3) years and for four (4) years as Internal Controls Manager.

Page 6

40. From September 1990 to August 1999 Williams worked in Thailand. For the first five (5) years there he worked as Internal Audit Manager, a position in which he was responsible for auditing all ExxonMobil businesses in Thailand, Singapore, Hong Kong, China and other smaller Southeast Asia countries.

41. For the following four (4) years he worked as Assistant Controller for ExxonMobil's Thailand businesses.

42. After September 1999 and all the way to January 2006 Williams worked in Singapore. The first five (5) years there he worked as Internal Controls Manager for ExxonMobil's Asia Pacific Regional Chemicals, and for the next almost two (2) years as Project Controller for ExxonMobil's $6 billion Singapore Aromatics Construction Project. This was Williams' ending position for ExxonMobil.

43. Williams retired from ExxonMobil on January 31, 2006 and, since that time, he has lived as an ExxonMobil retiree in Thailand. In all, he has resided in Thailand for nearly twenty-five (25) years, of which nine (9) years as an employee of ExxonMobil and for more than fifteen (15) years as an ExxonMobil retiree.

44. At all times relevant, Williams has had a dependent on ExxonMobil's Medical Insurance Plan who has resided with him in Thailand at all relevant times. Williams' dependent was a "beneficiary" under ExxonMobil's Medical Plan.

ExxonMobil's ERISA Advisories and Changes to the Plan

45. In the fall of 2020 ExxonMobil issued, through the Exxon Mobil Benefits Service Center, an Advisory to Frazier, informing him and all similarly situated employees that the Annual Enrollment Period under ExxonMobil's Medical Plan extended from October 19, 2020 to November 9, 2020. At that time, and at all relevant times, Frazier, Callery, and Williams, were residing in Thailand and were residents of Thailand.

Page 7

46. Under Thai law, each Plaintiff was required to maintain continuous health insurance as a condition to maintain residence in Thailand. As explained previously, each Plaintiff had lived in Thailand following retirement from ExxonMobil and had maintained the required health insurance, continuously, through ExxonMobil's Health Benefits Plan. As a result, each Plaintiff was able to maintain his residence in Thailand, along with their dependents, as appropriate, since their retirement until now.

47. The Advisory imposed a November 9, 2020 deadline for enrollment. The Advisory specifically informed Frazier about enrollment in "ExxonMobil retiree health care benefits" plan, and also alerted him to "important changes for the 2021 plan year." It also presented to Frazier and his wife ("you and your covered family members who meet the plan's eligibility requirements under the ExxonMobil Retiree Medical Plan") "options and rates" for the following year.

48. The Advisory further contained a "What's New?" Section which advised Frazier of changes for the upcoming year. The changes were to become effective on January 1, 2021 and to affect ExxonMobil's Retiree Medical Plan.

49. One anticipated change predicated continued coverage under the Plan on Frazier "and your eligible family member" on "having a physical US street address," adding, that "P.O. boxes and addresses outside the U.S. are not accepted."

50. Frazier was allowed to continue medical coverage for one year, with the understanding that, if, at the end of 2021 he would not meet the residence requirement in the preceding paragraph , his and his wife's benefits under the "ExxonMobil Retiree Medical Plan" would end on December 31, 2021.

Page 8

51. Essentially, this would mean that Frazier and his wife, who is a Thai citizen and resident, would have to relocate to the United States, provided that such an avenue would be viable and available.

52. Of note, the Advisory specified that the change would "affect fewer than 200 retirees out of 47,000 participants." Thus, Plaintiffs were placed, based on unlawful and unethical criteria, in a group which made up less than .5% of the entire retiree group. This contradicted ExxonMobil's commitment to high ethic standards as well which state, among others, that "(e)ven where the law is permissive, the Company chooses the course of highest integrity."

53. Finally, the Advisory contained a Nondiscrimination Notice, stating that "The ExxonMobil Retiree Medical Plan and its administrators comply with applicable Federal civil rights laws and do not discriminate on the basis of race, national origin, age, disability or sex."

54. All Plaintiffs received identical notifications and advisories.

Plaintiffs Seek Redress Amicably

55. Alarmed by the changes, on October 8, 2020, Williams emailed ExxonMobil and outlined his concerns about the changes, emphasizing that the changes were impacting adversely not only him, but also Callery, Frazier, and another ExxonMobil retiree who also lived in Thailand.

56. Williams' electronic mail covered a number of relevant and extremely serious points.

57. First, Williams emphasized that the Plaintiffs "would no longer be covered if we do not have US street addresses." He worried that even if they could procure such

Page 9

addresses by various means, time would be insufficient to enable them to comply with the residence requirement by January 1, 2021.

58. Second, Plaintiffs emphasized that they retired overseas in reliance on being able to continue to have medical insurance coverage through ExxonMobil. They further pointed out that their average age was 74 and would not be able, for this or other reasons, to "obtain acceptable and reasonable coverage from outside sources."

59. Third, they informed ExxonMobil that for them "to obtain annual visas to live in Thailand, medical insurance is required by the Thai Government."

60. Fourth, of particular and notable concern to the Plaintiffs, was ExxonMobil's apparent fraudulent and unethical conduct. They viewed the unexpected, radical, and detrimental changes as a failure of ExxonMobil's "high standards of Business Ethics and fairness." Particularly pointed was their joint remark that they relied on ExxonMobil's representations about healthcare to make major "life changes." They further were disappointed because the 2021 changes were made long after Plaintiffs had retired and had, in the meanwhile, anticipated in good faith that the conditions and eligibility qualifications would remain constant.

61. On October 12, 2020 Plaintiffs resubmitted Williams' October 8, 2020 note to four (4) members of ExxonMobil's Board Audit Committee.

62. On November 20, 2020 ExxonMobil responded by email, clarifying that the changes only applied to ExxonMobil retirees over the age of 65. Yet, until that time, each Plaintiffs had received health benefits under ExxonMobil's Plan for several years, even though they reached age 65 years before. Specifically, Callery is 69 now, Williams 71, and Frazier 72.

Page 10

63. It thus appears that Plaintiffs were specifically targeted for this discriminatory, unethical, and unfair treatment due to their age and other unlawful criteria. It is also apparent that ExxonMobil discriminated against the Plaintiffs with specific intent.

64. ExxonMobil's undated response also reiterated that the Plaintiffs had to "reside in the service area of the plan" to be entitled to health benefits.

Devastating Impact on the Plaintiffs

65. Plaintiffs have not been able, are unable, and will be unable to obtain replacement health care coverage in Thailand or outside of the ExxonMobil Plan. In all likelihood they will not be able to secure replacement health care insurance in the future due to their age and pre-existing conditions.

66. ExxonMobil's justification for singling Plaintiffs out for unlawful treatment, outlined in the November 20, 2020 email to them, is also incorrect. The particular federal regulations and the interpretation which ExxonMobil has invoked to deprive all retirees over the age of 65 residing outside of the United States are inapplicable. Alternatively, they were applied intentionally to single out and deprive an entire class of ExxonMobil retirees of health insurance, with the deliberate intent to interfere with their rights to existing benefits or future benefits.

67. American retirees under age 65 living anywhere in the world would still be allowed to enroll in the Medical Plan regardless of place of residence.

VI.

PLAINTIFFS' ERISA CAUSE OF ACTION UNDER 29 USC SECTION 1140

68. Plaintiffs reallege all factual allegations made in the preceding paragraphs and would show that all Defendants are liable to them jointly and severally for violations of 29 USC Section 1140 which states, in relevant part, that "it shall be unlawful for any person to

Page 11

… discriminate against a participant or beneficiary … or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title …"

69. At all times relevant, Plaintiffs were participants under the Medical Plan, and their spouses were beneficiaries under the Plan.

70. At all relevant times, Defendant ExxonMobil was an employer and a plan sponsor under ERISA and Defendant ExxonMobil Medical Plan was an employee welfare benefit plan. They wrongfully interfered with the Plaintiffs' rights and benefits under the Plan for the specific purpose of depriving them of future benefits under the Plan.

71. Moreover, Defendants intentionally misled the Plaintiffs in allegedly relying on federal regulations to segregate the Plaintiffs based on age and place of residence for the specific purpose and with the specific intent to deprive them of benefits under the Plan in the future.

72. Thus, Defendants failed to consider the likely and imminent harm to the Plaintiffs and their dependents, as applicable.

73. Defendants' acts proximately caused Plaintiffs actual and compensatory damages. Moreover, Defendants' acts were perpetrated with malice or with reckless disregard for Plaintiffs' rights and, as such, Plaintiffs request that the court allow exemplary damages against Defendants on this count.

74. Along these lines, it is manifestly clear that Defendants deliberately adopted unlawful rules, or changed the rules, which singled Plaintiffs due to their age and residency, and further took advantage of their peculiar familial and residence status to intentionally deprive them of health benefits. EM segregated less than .5% of the overseas retirement population from the rest of the retiree group to treat them in this manner.

75. Accordingly, Plaintiffs seek actual damages, recovery of benefits, reasonable and necessary attorneys' fees, interest, and expenses.

VII.

PLAINTIFFS' ERISA CAUSE OF ACTION UNDER 29 USC SECTION 1132

76. Additionally, Plaintiffs bring this claim against Defendants pursuant to 29 USC Section 1132(a) (1) and (3) to enjoin acts and practices of the Defendants which violate the Employee Retirement Income Security Act, as amended, or the terms of the Plan; to obtain other appropriate equitable relief; and to enforce any applicable provisions of ERISA and the terms of the Plan.

VIII.

PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY

77. Plaintiffs further reallege the factual allegations made above and would show that Defendants, were, at all relevant times, fiduciaries as defined in 29 USC Section 1102, or, alternatively, under the common law of the State of Texas, and owed the Plaintiffs the fiduciary duties enumerated in 29 USC Section 1004, as well as those established and recognized under the common law of the State of Texas.

78. In intentionally seeking a way to discriminate against the Plaintiffs; to segregate them from the 47 000 ExxonMobil retirees worldwide; in allegedly, yet untruthfully, relying on federal precepts for segregating the Plaintiffs with the specific intent to deny them future health benefits; in specifically representing to the Plaintiffs, falsely, that ExxonMobil does not discriminate, including discrimination based on age; in specifically representing to the Plaintiffs, falsely, that ExxonMobil only engages in ethical practices; in taking advantage of Plaintiffs' age, residence, and the status of their spouses, as applicable; and in engaging in similar actions, Defendants breached their fiduciary duties to the Plaintiffs under both, ERISA and Texas common law.

79. Plaintiffs have been harmed by Defendants' breach of their fiduciary duties to them. Accordingly, they seek to recover from Defendants all damages commonly available to them under Texas common law for breach of fiduciary duty, including disgorgement.

IX.

PLAINTIFFS' CAUSE OF ACTION FOR DETRIMENTAL RELIANCE

80. Plaintiffs further reallege all factual allegations made above and would show that Defendants are further liable to them for promissory estoppel / detrimental reliance.

Page 13

Plaintiffs reasonably relied on Defendants' representations that they do not discriminate, are ethical in all of their business practices, and, accordingly, they made life-long commitments and life choices with respect to their future, retirement, residence, and dependents.

81. They additionally relied on prior practices and the ability to freely enroll in Defendants' retiree medical plan even after reaching the age of 65, only to be confronted with the sad reality, as they advanced in age, that Defendants would deprive them of the ability to enroll in future health plans. Accommodating Defendants' unreasonable, unethical, and unlawful conditions for Plaintiffs' continued enrollment in the Plan would cause the Plaintiffs serious harm, and would disrupt their lives and settled routines.

82. Accordingly, Plaintiffs move the court for all damages, direct, actual, and consequential, to which Plaintiffs are entitled under the law.

X.

PLAINTIFFS' ACTION FOR DECLARATORY JUDGMENT

83. Plaintiffs further reallege all factual allegations made above and would respectfully move the court for a Declaration of their rights under the Plan. This plea is made pursuant to 28 USC Section 2201(a) which states, in relevant part, that "(i)n a case of actual controversy within its jurisdiction, …, any court of the United States, …, may declare the rights and other legal relations of any interested party seeking such declaration …"

84. Accordingly, Plaintiffs seek a Declaration from the District Court regarding their rights and entitlement to benefits under ExxonMobil's Plan, ERISA, and, more specifically, that their rights have been violated; that they are entitled to future benefits under ExxonMobil's Medical Plan; that Defendants may not interfere with their rights under the Plan in the future.

85. More particularly, under 29 USC Section 1132(a)(1)(B) Plaintiffs seek a Declaration enabling them "to recover benefits due them under the terms of [the] plan, to enforce [their] rights under the terms of the plan, [and] to clarify [their] rights to future benefits under the terms of the plan."

XI.

Page 14

## DAMAGES

86. Plaintiffs are now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' unlawful practices unless and until this court grants relief.

## XII.

## JURY DEMAND

87. Plaintiffs respectfully demand a trial by jury.

## XIII.

## PRAYER FOR RELIEF

88. WHEREFORE, PREMISES CONSIDERED, Plaintiffs Timothy K. Callery, John B. Frazier, and James T. Williams pray that Defendant ExxonMobil Corporation and Defendant ExxonMobil Medical Plan, be cited to appear and answer and that on final trial Plaintiffs be granted relief as follows:

1. Judgment declaring that the acts and practices described herein violate The Employee Retirement Income Security Act of 1974, as amended, 29 USC Section 1001 et seq.;

2. Judgment enjoining and permanently restraining these violations;

3. Judgment directing Defendants to pay Plaintiffs actual, compensatory, liquidated, and punitive damages on all counts, whether statutory or common law, and benefits under the Plan;

4. Judgment clarifying Plaintiffs' rights under the Plan and a Declaration that they are entitled to future benefits under the Medical Plan;

5. Costs of suit and reasonable attorney's fees;

6. Prejudgment and postjudgment interest as provided by law; and

7. Such other and further relief, in law and in equity, to which Plaintiffs may be justly entitled.

       Respectfully submitted,

       BY: //sis// *peter costea*
       _____
       Peter Costea
       TBN 04855900
       4544 Post Oak Place, Suite 350
       Houston, Texas 77027
       Tel. 713-337-4304
       Fax 713-237-0401
       Email: peter@costealaw.com
       ATTORNEY FOR PLAINTIFFS
       TIMOTHY K. CALLERY, JOHN B. FRAZIER
       and JAMES T. WILLIAMS